UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gloria C., | Case No. 21-CV-1858 (JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Gloria C. seeks judicial review of a final decision by the Defendant Commissioner of Social Security denying her application for supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 18) and Defendant's Motion for Summary Judgment (Dkt. No. 20). Plaintiff seeks reversal of the final decision and remand to the Social Security Administration ("SSA") on the ground that the Administrative Law Judge ("ALJ") erred in determining that she had no severe impairments. Defendant opposes Plaintiff's motion and asks the Court to affirm the final decision.

For the reasons set forth below, the Court concludes that the ALJ erred in assessing the severity of Plaintiff's medically determinable physical impairments. Therefore, the Court grants Plaintiff's motion, denies Defendant's motion, reverses the final decision, and remands the matter to the SSA for further proceedings.

1

**I.      Background**

Plaintiff applied for SSI on March 21, 2019, asserting that she became disabled on November 1, 2018. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 19, 40.)[1] Her alleged impairments were arthritis, carpal tunnel syndrome, depression, epilepsy, hepatitis C, and shortness of breath. (R. 223.)

**A.      Relevant Medical and Other Evidence**

Defendant contends that evidence before the SSI application date of March 21, 2019 is not relevant. (Def.'s Mem. Supp. Mot. Summ. J. at 3, 11–12, Dkt. No. 21.) That is not accurate. Although SSI benefits are not payable before the month following the month in which the application was filed, *see* 20 C.F.R. § 416.335, medical records before the application date and close to the onset date are potentially relevant to the period for which the claimant may receive benefits. *A.S.A. v. Saul*, No. 20-CV-74 (ECW), 2021 WL 1062037, at *3 (D. Minn. Mar. 19, 2021) (quotation omitted), *appeal dismissed*, No. 21-1949, 2021 WL 4959035 (8th Cir. Sept. 15, 2021). Further, 20 C.F.R. § 416.912 requires the SSA to develop a claimant's "complete medical history," which includes records from medical sources for "at least the 12 months preceding the month in which you file your application." In this case, the ALJ expressly considered Plaintiff's complete medical history, citing both 20 C.F.R. §§ 416.335 and 416.912. (R. 19, 22–25.) Likewise, the Court will consider all evidence that relates to Plaintiff's impairments.

---

[1] The Social Security administrative record is filed at Dkt. Nos. 13 through 13-8. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

2

1.  **Physical Impairments**

In September 2018, Plaintiff saw Matthew Thompson, M.D., for evaluation of bilateral shoulder pain. (R. 287.) Dr. Thompson's objective findings included no gross abnormalities, somewhat limited range of shoulder motion, normal strength, mildly positive tests for joint pain, normal sensation, no instability, and mild tenderness. (R. 288.) Imaging of Plaintiff's right and left shoulders showed moderate spurring at the humeral head and mild joint narrowing. (R. 288.) Dr. Thompson referred Plaintiff to physical therapy and prescribed anti-inflammatory medication.

Plaintiff reported shortness of breath due to chest pain to another provider in September 2018. (R. 302.) Imaging and objective findings were unremarkable. (R. 305–06.) In March 2019, Plaintiff complained of shortness of breath, sore throat, and cough. (R. 312, 314.) A chest x-ray showed no evidence of pneumonia, but evidence of bridging osteophytosis of the thoracic spine, several lower thoracic spine anterior wedge deformities, and compressions of upper lumbar vertebral bodies from Schmorl's nodes. (R. 324.)

In October 2018, Plaintiff saw Samer Abdel-Aziz, M.D., for shoulder pain. (R. 341.) She reported pain in the bilateral shoulders, radiating into the arms and hands, which she described as always a 10/10 on the pain scale. (R. 342.) She also reported numbness, tingling, and weakness in her bilateral upper extremities. (R. 342.) Dr. Abdel-Aziz diagnosed arthrosis of both shoulders, chronic neck pain, cervical radiculopathy, myofascial pain syndrome, and cervicalgia. (R. 341.) He ordered an MRI to determine if the pain was neuropathic in nature, but he also remarked the pain had a "big myofascial

3

component." (R. 344.) Dr. Abdel-Aziz prescribed a topical gel and Cymbalta. (R. 345.) The subsequent MRI showed degenerative changes of moderate disc space narrowing, and mild to moderate neural foraminal narrowing, and mild to moderate central canal stenosis between several discs. (R. 347.)

A nurse practitioner, Mary B. Donnelly, also saw Plaintiff in October 2018. Plaintiff told Ms. Donnelly that she could not tolerate her job at a retail store due to problems grasping and shoulder pain. (R. 356.) Ms. Donnelly observed slight edema of the upper extremities but no musculoskeletal irregularities. (R. 356.) Plaintiff reported constant numbness and tingling in all digits to Dr. David Dennison later that month. (R. 375.) Several EMGs showed "moderate right carpal tunnel, left carpal tunnel and old C7 radiculopathy." (R. 375.)

In late October 2018, Plaintiff had carpal tunnel surgery on her right hand and "had a nice result," according to Carol P. Holtz, M.D. (R. 370.) Plaintiff intended to have surgery on her left hand in December 2018. (R. 370.) Plaintiff reported nonepileptic seizure-like spells, but she generally could either prevent them from happening or stop them quickly when they started. She was not on any medication for that condition, nor was any needed. (R. 371.) Dr. Holtz listed Plaintiff's diagnoses as bilateral carpal tunnel syndrome, moderate depression, depressive disorder, functional neurological conversion disorder, nonepileptic behavioral spells, hepatitis C, myofascial pain syndrome, and cervical radiculopathy. (R. 370–71.) A physical examination showed normal range of motion, strength, and reflexes in all extremities. (R. 371.)

Nurse practitioner Jennifer Neumann saw Plaintiff in July 2019 for flu-like symptoms, generalized weakness, dizziness, and headache. (R. 459.) Neurological and musculoskeletal findings during a physical examination were normal. (R. 459.) Ms. Neumann believed Plaintiff's symptoms could have been caused by an abrupt discontinuation of her antidepressant and other medications. (R. 459.)

Plaintiff had an orthopedic musculoskeletal consultative examination in October 2019. (R. 557.) Plaintiff reported pain in both shoulders, low back pain, and painful and swollen hands. (R. 557.) She had not followed up with the physical therapy referral or had the left-hand carpal tunnel surgery. (R. 557.) Physical examination findings by Brian Allen, D.O., were mostly normal or unremarkable, although Dr. Allen did document tenderness in the spine and shoulders. (R. 558–59.) His impressions correlated with previous diagnoses. (R. 560.)

An x-ray of Plaintiff's right hand in November 2019 showed only mild degenerative changes. (R. 572.) A radiology report from February 2020 showed minimal or moderate spondylosis between discs, and lower lumbar facetal arthrosis in two places, but no other abnormalities. (R. 585.)

Ms. Neumann treated Plaintiff in November 2019 for back pain. (R. 642.) Plaintiff reported 10/10 pain, but the neurological and musculoskeletal examinations were normal. (R. 642.) Plaintiff said she was taking "pills" but did not know what they were or who gave them to her. (R. 643.) Plaintiff refused the lab work that was needed before Ms. Neumann could order imaging of Plaintiff's back, and Plaintiff left the appointment. (R. 643.) Due to Plaintiff's responses and behavior at the appointment, Ms. Neumann canceled Plaintiff's

5

refills and requested a drug screen. (R. 643.) At an appointment the following month with Kavita Prasad, M.D., Plaintiff reported generalized pain throughout her body. (R. 649.) A physical examination was normal. (R. 650–51.)

State agency medical consultant Ann Fingar, M.D., opined in February 2020 that Plaintiff had the following exertional limitations: lifting or carrying 20 pounds occasionally, lifting or carrying 10 pounds frequently, standing or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday. (R. 76.) According to Dr. Fingar, Plaintiff could never climb ladders, ropes, or scaffolds; could balance only occasionally; should avoid unprotected heights; was limited in reaching overhead due to her shoulder dysfunction; and was limited in handling due to carpal tunnel syndrome. (R. 77.) State agency medical consultant Dr. Gregory Salmi concurred with these findings in May 2020. (R. 96–99.)

### 2. Mental Impairments

Plaintiff attended a psychotherapy appointment with Alan Rodgers, LICSW, in July 2018. (R. 382.) She reported feeling depressed for the past several months, hearing voices, and past seizures due to marijuana use. (R. 382–83.) Her depression symptoms included lack of motivation, energy, and interest in activities; feeling down; trouble concentrating; oversleeping; feeling hopeless; and poor appetite. (R. 385.) An intake questionnaire yielded a score of 12, indicating mild depression. (R. 390–91.) Mr. Rodgers recommended ongoing therapy. (R. 385.) Plaintiff told nurse practitioner Susan Majerus in September 2018 that she was feeling stressed and anxious due to lack of employment. (R. 440.)

Although Plaintiff's visit with Dr. Holtz in October 2018 was for carpal tunnel surgery follow-up, Dr. Holtz also remarked that Plaintiff felt fatigued, "blue," isolative, and not hungry, and the doctor noted a past medical history of depression and anxiety. (R. 370.) Dr. Holtz remarked that Plaintiff had some difficultly answering questions, but did not know whether Plaintiff was avoiding answering or if that was her baseline. (R. 371.)

At a therapy appointment in October 2018, Plaintiff reported similar depression symptoms and also anxiety-related symptoms of feeling tense, difficulty concentrating, worry, and fear. (R. 401.) Plaintiff reported extreme anxiety and fluctuating mood to Ms. Majerus in late October 2018, and said she had not been taking her medication because she could not find it. (R. 447.) Plaintiff was discontinued from psychotherapy for several months due to not attending appointments. (R. 473, 484.) In May 2019, Kaylee Nelson, LICSW, recommended adult case management services for Plaintiff to help her maintain housing, keep appointments, and maintain independence. (R. 417.)

Plaintiff called a triage line in January 2019 and reported excessive sleepiness and fatigue due to an increased dosage of Cymbalta. (R. 497.) She had stopped taking the medication, however, which improved her sleepiness, but increased her symptoms of depression. (R. 497.)

In October 2019, Plaintiff had a psychological evaluation by Debra A. Moran, L.L.C., M.A., L.P. (R. 563.) The mental status examination was normal, except for an impaired memory when recalling three items from memory, inability to count by seven, and inability to correctly estimate the time. (R. 568.) She was also slow to remember her birthdate, the present date, and her address. (R. 568.) Ms. Moran reviewed documentation

7

from 2011 that showed diagnoses of a cognitive disorder and mild mental retardation. (R. 568.) Ms. Moran provisionally diagnosed Plaintiff with a mild intellectual disability, cognitive disorder, and moderate depression. (R. 569.) In her summary, Ms. Moran noted that Plaintiff's pace was slow; her persistence and concentration were limited; her ability to understand complex instructions would likely be problematic; and her ability to tolerate stressors would likely be limited. (R. 569.)

Plaintiff reported low energy, frequent crying, sleepiness, and low appetite to Dr. Prasad in December 2019. (R. 649.) She had stopped taking her medication, so Dr. Prasad restarted her on Cymbalta. (R. 651.) The following month, Plaintiff reported significant improvement with depression and said she was feeling much happier. (R. 655.) Crying and low appetite had resolved. (R. 655.)

State agency medical consultant Linda Berberoglu, L.P., opined in December 2019 that Plaintiff was moderately limited in understanding and remembering detailed instructions, carrying out detailed instructions, completing a normal workday and workweek without being interrupted by psychological symptoms, performing at a consistent pace without an unreasonable number of breaks, and responding appropriately to changes in the work setting. (R. 79–80.) State agency medical consultant Mera Kachgal, Ph.D., L.P., concurred with these findings in May 2020. (R. 99–101.)

### B. Procedural History

Plaintiff's SSI application was denied at the initial review and reconsideration stages. An ALJ held a hearing at Plaintiff's request on November 10, 2020. (R. 36.) Plaintiff testified that she could not work because of arthritis in her hands and shoulders,

which precluded her from lifting heavy objects; numbness in her hands; and fingers that "lock on me." (R. 52.) She could lift about 20 pounds. (R. 53.) She could stand for about two hours, after which she would get tired and her left leg would hurt. (R. 54.) Plaintiff testified she also felt dizzy when she stood from a seated position. (R. 55.) She felt depressed and lonely and had trouble with concentration and memory, but she could keep track of her medications and medical appointments. (R. 55.) She took Duloxetine for depression. (R. 59–60.)

The ALJ issued a written decision on December 1, 2020, concluding that Plaintiff was not disabled. (R. 16–26.) The ALJ noted that SSI benefits are not payable before the month following the month in which the application was filed, but considered Plaintiff's complete medical history in accordance with 20 C.F.R. § 416.912.[2] (R. 19.)

Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 416.920(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity between her application date of March 21, 2019 through the date of the decision. (R. 21.) At the second step, the ALJ found that Plaintiff had the following medically determinable impairments: mild bilateral hand osteoarthritis, mild bilateral shoulder degenerative joint disease, degenerative disc disease, obesity, residual effects of substance abuse, depression, anxiety, intellectual disorder, and neurocognitive disorder. (R. 21.) The ALJ determined,

---

[2] Under the applicable regulation, a claimant's "complete medical history" covers records from medical sources for "at least the 12 months preceding the month in which you file your application." 20 C.F.R. § 416.912(b)(1).

however, that no impairment or combination of impairments significantly limited Plaintiff's ability to do basic work-related activities for 12 consecutive months. (R. 21.)

In making this determination, the ALJ considered Plaintiff's symptoms and subjective statements about her impairments. (R. 22.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms of limited shoulder movement, hand numbness, depression, feelings of sadness and isolation, epilepsy with convulsive-like seizures occurring three to four times a week, shortness of breath, loss of consciousness, and trouble tending to personal care tasks due to shoulder and hand pain. (R. 22.) The ALJ also found that Plaintiff's statements about the intensity, frequency, and limiting effects of her symptoms were not consistent with objective medical findings. (R. 22.) Specifically, the ALJ stated there were no objective medical findings of carpal tunnel syndrome or epilepsy; physical examination findings and imaging results were normal or mild; Plaintiff did not follow through with referrals; and her right-hand carpal tunnel surgery went well. (R. 22–23.) In addition, mental examination findings and testing also documented normal or mild symptoms; Plaintiff did not follow through with treatment recommendations; and Plaintiff told a provider that her mental health symptoms were improving. (R. 23–24.)

In applying the four broad functional areas listed in § 12.00C of the Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Paragraph B criteria") to Plaintiff's mental impairments, the ALJ determined that Plaintiff had only mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself.

(R. 24–25.) Because, according to the ALJ, Plaintiff's medically determinable mental impairments caused only mild limitations and the record did not contain evidence of more than a minimal limitation in Plaintiff's ability to do work activities, Plaintiff's impairments were not severe. (R. 25.)

In reaching this conclusion, the ALJ was not persuaded by the opinions of Ms. Berberoglu, Dr. Kachgal, or Ms. Moran, particularly their opinions that Plaintiff would have more than mild limitations in the Paragraph B criteria. (R. 25.) The ALJ was also not persuaded by the opinions of Dr. Fingar or Dr. Salmi. (R. 25.)

Consequently, the ALJ deemed Plaintiff not disabled at step two of the sequential evaluation. (R. 26.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 5), which made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II.   Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse

11

the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992). A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

Step two of the sequential evaluation requires an ALJ to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 416.920(c). Age, education, and work experience are not considered. *Id.* "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* The claimant's burden has also been described as "*de minimis*." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).

When a claimant has a medically determinable mental impairment, the ALJ must use a "special technique" and rate four broad functional areas known as the Paragraph B criteria: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R.

§ 416.920a(c)(3). If the ALJ rates a degree of limitation as "mild," the ALJ generally will conclude that the corresponding impairment "is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1).

### III.   Discussion

Plaintiff argues that she has made her *de minimis* showing of a severe impairment. (Pl.'s Mem. Supp. Mot. Summ. J. at 15, Dkt. No. 19.) She first relies on the findings of the state agency medical consultants, noting they found she had severe impairments of carpal tunnel syndrome, osteoarthrosis, vestibular system disorder, neurocognitive disorder, and depressive disorder. (*See* R. 72, 92.)

The ALJ deemed the mental impairment findings from Ms. Berberoglu and Dr. Kachgal not persuasive on the ground that the record did not support more than mild limitations in the Paragraph B criteria. (R. 25.) Particularly, the ALJ noted, Plaintiff received minimal mental health treatment; Plaintiff often attended only initial assessments; Plaintiff attended only a few therapy sessions; and therapy sessions documented unremarkable findings. (R. 25.) The ALJ deemed the physical impairment findings from Dr. Fingar and Dr. Salmi not persuasive because their findings referred to "possible" impairments and "whatever etiology" of symptoms and the ALJ thought the findings were not based on objective medical evidence. (R. 25.)

Under 20 C.F.R. § 416.920c, "prior administrative findings" such as those by Ms. Berberoglu, Dr. Kachgal, Dr. Fingar, and Dr. Salmi are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with

13

the claimant, specialization, and any other relevant factors. The two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Keeping in mind that Plaintiff's burden at step two is to make a *de minimis* showing of a severe impairment, the Court considers whether the ALJ erred in evaluating the prior administrative findings of record.

As to Plaintiff's mental impairments, the Court finds that the ALJ did not err in evaluating Ms. Berberoglu's and Dr. Kachgal's prior administrative findings and that the ALJ's persuasiveness evaluation is supported by substantial evidence of record. The ALJ explained that Ms. Berberoglu's and Dr. Kachgal's findings were not supported by the objective medical evidence contained in treatment records and therapy progress notes. Though succinct, that is a valid reason to reduce the persuasive value of prior administrative findings.

Further, substantial evidence supports the ALJ's conclusion. The evidence of record shows mild symptoms of depression and mild degrees of functional limitations. There are some reports and findings of impaired memory, but more-than-mild memory loss was rarely observed by Plaintiff's providers and was not documented consistently in her treatment history. There is little evidence that Plaintiff's memory issues affected her abilities to understand, remember, or apply information to more than a mild degree. In addition, Plaintiff testified she could keep track of her medications and medical appointments. Similarly, there are some reports of isolative tendencies in the record, but treatment records did not reflect difficulties in interacting with others. As far as Plaintiff's abilities to concentrate, persist, and maintain pace, there is evidence that she was slow to

14

respond to questions at times and had trouble counting by sevens. But that evidence does not establish a *significant* limitation on Plaintiff's ability to do work activities for at least a 12-month period. As the ALJ noted, treatment notes did not consistently document abnormal attention or concentration. (R. 25.) Nor did treatment notes overall report more than mild limitations in Plaintiff's ability to adapt or manage herself. Finally, by February 2020, Plaintiff's depression symptoms had improved significantly, according to both Plaintiff and her doctor.

In sum, the Court finds the ALJ did not err in evaluating the persuasive value of the prior administrative findings of Ms. Berberoglu and Dr. Kachgal.

The Court concludes otherwise, however, with respect to the prior administrative findings of Dr. Fingar and Dr. Salmi. The first reason the ALJ gave for deeming their findings not persuasive was—essentially—word choice: that they referred to "possible" impairments and "whatever the etiology" of symptoms. The ALJ did not specifically discuss how those words affected the factors of supportability or consistency, however, or any of the other § 416.920c(c) factors, for that matter. Furthermore, neither Dr. Fingar nor Dr. Salmi used the word "possible" when identifying carpal tunnel syndrome, osteoarthrosis, and vestibular system disorder as medically determinable *and* severe physical impairments. (R. 72, 92.) As for the phrase "whatever the etiology," the ALJ ignored the greater context of the phrase. In response to a question about postural limitations and supporting evidence, the consultants responded: "Limitations secondary to possible seizure disorder v. behavioral spells. Whatever the etiology, claimant needs to avoid unprotected heights." (R. 77, 97.) It is clear that Dr. Fingar and Dr. Salmi opined that

15

Plaintiff needed to avoid heights; whether that limitation was attributable to a seizure disorder or behavioral spells was immaterial. Thus, the phrase "whatever the etiology" did not affect the supportability or consistency of the consultants' unprotected-heights limitation, or their findings overall.

The second reason given by the ALJ for deeming the prior administrative findings of Dr. Fingar and Dr. Salmi not persuasive was that they did not base the findings on objective medical evidence. (R. 25.) That is simply not correct. The prior administrative findings describe x-ray, EMG, and MRI imaging results; a diagnosis of carpal tunnel syndrome; surgery on Plaintiff's right hand for carpal tunnel syndrome; a recommendation and plan for surgery on Plaintiff's left hand for carpal tunnel syndrome; and a diagnosis of degenerative joint disease for Plaintiff's shoulder, among other objective medical evidence. (R. 70–71, 78, 98.) Although some of this evidence predates March 2019, the Court finds it is relevant to assessing the severity of Plaintiff's impairments after that date. No intervening circumstances changed the imaging results, the carpal tunnel diagnosis for Plaintiff's left hand, or the diagnosis of degenerative joint disease.

Consequently, the Court finds that the ALJ erred in evaluating the prior administrative findings of Dr. Fingar and Dr. Salmi at step two of the sequential evaluation, and remand is required. The Court declines to award benefits outright, as Plaintiff requests, because "[t]here is no regulatory or administrative provision for establishing disability at step two." *Alaa M. K. A. v. Saul*, No. 20-CV-1066 (SRN/HB), 2021 WL 3023743, at *6 (D. Minn. July 1, 2021) (citing 20 C.F.R. § 416.920(a)(4)(ii)), *R. &. R. adopted*, 2021 WL 3022699 (D. Minn. July 16, 2021).

Plaintiff next argues that objective medical evidence supports a finding that her physical impairments are severe. (Pl.'s Mem. Supp. Mot. Summ. J. at 15.) The Court has described some of that evidence in the above discussion, including the prior administrative findings of Dr. Fingar and Dr. Salmi (if they are found persuasive on remand). Other evidence that could add to Plaintiff's *de minimis* showing, when considered on remand, includes early imaging of Plaintiff's shoulder, a chest x-ray, Dr. Abdel-Aziz's diagnoses and findings, an MRI ordered by Dr. Abdel-Aziz, and Plaintiff's ongoing left-hand carpal tunnel syndrome. Although some of this evidence predates the March 21, 2019 application date, it could relate to the severity of Plaintiff's impairments after that date since the impairments were ongoing. Therefore, the ALJ should consider the objective medical evidence of Plaintiff's physical impairments when reconsidering on remand whether the impairments are severe.

In particular, the ALJ's finding that "the record does not even establish carpal tunnel syndrome . . . as [a] medically determinable impairment[]" is not supported by substantial evidence of record. A diagnosis of carpal tunnel syndrome is documented numerous times in the record. (*E.g.*, R. 370–71, 375.) Although Plaintiff had carpal tunnel surgery on her right hand, she did not have carpal tunnel surgery on her left hand.

Plaintiff's final argument is that the ALJ erred in reducing the persuasive value of prior administrative findings because the consultants relied on her subjective statements about her symptoms. (Pl.'s Mem. Supp. Mot. Summ. J. at 16–17.) But the ALJ did not cite this reason as a basis to reduce the persuasive value of the prior administrative findings. (*See* R. 25.) Plaintiff's argument therefore misses the mark.

17

The ALJ did consider Plaintiffs' subjective statements about her symptoms in the context of her ability to perform basic work activities. (R. 22–24.) An ALJ should consider a claimant's symptoms at step two of the sequential evaluation when evaluating whether an impairment is severe. 20 C.F.R. § 416.929(d)(1); SSR 16-3p, 2016 WL 1119029, at *10 (S.S.A. Mar. 16, 2016). Plaintiff has not identified any errors with the ALJ's direct assessment of her statements concerning the intensity, frequency, and limiting effects of her symptoms.

## IV.  Conclusion

The ALJ erred in assessing the severity of Plaintiff's medically determinable physical impairments at step two of the sequential evaluation. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (Dkt. No. 20) is **DENIED**.

3. The final decision of the Commissioner of Social Security is **REVERSED**, and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order, specifically, an assessment of whether Plaintiff's medically determinable physical

impairments are severe and, if warranted, a continuation of the sequential evaluation.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  August 14, 2022                         *s/ John F. Docherty*
                                               JOHN F. DOCHERTY
                                               United States Magistrate Judge